(No. 5996. February 15, 1934.)

FEDERAL LAND BANK OF SPOKANE, a Corporation, Respondent, v. UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, Appellant.

[29 Pac. (2d) 1009.]

McElroy & Chalfant and W. A. Brodhead, for Appellant.

Bissell & Bird, for Respondent.

MORGAN, J.—This is a suit to quiet title to the right to the use of 600 miner's inches of water, being a part of a water right consisting of 750 miner's inches, adjudicated in what is known as the "Frost decree" and appurtenant to land referred to in this case as the "Buller ranch." Appellant bases its claim to the right to the use of this water on its title to the Buller ranch, acquired by the foreclosure of a mortgage executed by Martin Albrethsen and his wife, who owned it, and respondent bases its claim to the right to the use of part of it on its title to a portion of what is referred to as the "Kingsbury ranch," also formerly owned by Albrethsen and wife, acquired by the foreclosure of a mortgage executed by them in its favor and recorded prior to the execution of appellant's mortgage.

The case has been before the court heretofore and our former decision is reported in 51 Ida. 490, 6 Pac. (2d) 486, where a statement of many of the facts will be found. Such additional facts as are deemed necessary to an understanding of the case, as now presented, will be hereinafter stated.

The second trial resulted in a decree quieting title in respondent, plaintiff in the district court, to the right to the use of 150 miner's inches of the water. This appeal is from that decree.

In an effort to prove the water right was included in its mortgage respondent introduced in evidence the application made to it by Martin Albrethsen for a loan on the part of the Kingsbury ranch which he and his wife mortgaged to it, in which application he stated 354 inches of water belonged with that land. Accompanying that application is a certificate of an appraiser for respondent in which questions were asked and answered with respect to the water right appurtenant to the land, as follows: "How is water right represented? Irrigation Dist. Is it appurtenant to the land and shown on abstract? Yes. Or, is it represented by shares of stock in an Irrigation Company, and if so the number of shares considered in your appraisal and name of Company issuing same? 350 inches Decreed

Wood River Valley Ir. Co.'' The abstract of title to the land mortgaged to respondent was not introduced in evidence. As pointed out in the former opinion, the water involved in this litigation was not disturbed by the irrigation district.

Martin Albrethsen was produced by respondent as a witness and in the course of his examination the following question and answer occurred: ''Q. Now, if this land that you mortgaged had any water right in excess of one-hundred and five inches what water right were you mortgaging? A. That is all I understood that I did mortgage; you been cutting up the land that I did mortgage but you haven't mentioned the South half (S½) of the Northeast Quarter (NE¼) of Section Eight (8), and that was covered by the mortgage. That was subirrigated the same as the Buller Land.''

While the application made by Albrethsen to respondent for a loan contained representations that 354 inches of water was appurtenant to the land offered as security it does not show any part of the 600 inches claimed by appellant was so appurtenant, and the statement made by the appraiser to the effect that the water right was shown on the abstract and consisted of water furnished by an irrigation company, or district, indicates that no part of the right here in litigation was represented to him as being appurtenant to the land offered to respondent as security for a loan. Furthermore, this application was not recorded and the representations therein made do not appear to have been brought to the notice of appellant.

The record shows that after the purchase of the Kingsbury ranch with its appurtenant water right, Albrethsen sold portions of that land and water right and portions of the Buller water right, so that at the time he mortgaged what he still owned of the Kingsbury ranch to respondent he owned but 105 miner's inches of the water right which was appurtenant to that ranch when he bought it, and 600 miner's inches of the water right which was appurtenant to the Buller land when he bought it. Undoubtedly, in order to make up the amount of water Albrethsen represented to

respondent as being appurtenant to the portion of the Kingsbury ranch he was offering as security for a loan, a portion of the Buller right would have to be included with what he still owned of the Kingsbury right.

As held in our former opinion, Albrethsen could, by abandoning the use of water on a tract of land belonging to him to which it was theretofore appurtenant, and by applying it to the exclusive use of another tract, also belonging to him, make it appurtenant to the last-mentioned tract if, in so doing, he did not interfere with the rights of others. Also, as pointed out in that opinion, the burden was on respondent to prove this was done.

The testimony introduced at the second trial, together with that introduced at the first, does not establish an intention on the part of Albrethsen and wife to take from the Buller ranch any part of its water right other than 150 inches thereof conveyed (to persons not parties to this litigation) by deeds wherein the water rights were fully described and the grantors' intention to so convey were fully expressed.

Assuming Albrethsen and wife could mortgage part of the Buller water right together with part of the Kingsbury ranch and thereby, and by foreclosure and sale, respondent could become the owner of the water right, as against the mortgagors, the question presents itself as to whether such a claim can be maintained against a subsequent mortgagee of the Buller land and water right appurtenant thereto. This is a question of notice. Did appellant have notice, actual or constructive, of the claims of respondent to a portion of the Buller water right?

While an abstract of title to the property mortgaged by Albrethsen and wife to respondent was not introduced in evidence, it is clear from the transcript that the records in the office of the county recorder of Blaine county disclose findings of fact and a decree in case of *S. C. Frost et al. v. Alturas Water Company et al.*, in which water rights were decreed, separately, to the Kingsbury and Buller ranches; that these ranches and water rights thereafter became the

property of Martin Albrethsen and wife, who conveyed portions of the Kingsbury land and all the water right appurtenant thereto except 105 miner's inches; that they also conveyed all the water right appurtenant to the Buller land except 600 miner's inches; that February 27, 1920, they mortgaged a portion of the Kingsbury land to respondent, and in the mortgage recited: "together with all waters and water rights of every kind and description and however evidenced or manifested, which now or hereafter may be appurtenant to said premises or any part thereof, or incident to the ownership thereof, or any part thereof, or used in connection therewith." That mortgage was foreclosed and resulted in the issuance of a sheriff's deed conveying the land and water right, so described, to respondent.

An abstract of the Buller water right was introduced in evidence and it shows a portion of the Frost findings and decree wherein there was awarded to R. F. Buller and his wife 750 miner's inches of the waters of Big Wood River which became appurtenant to the Buller ranch. It also shows the conveyance of that ranch and water right to Martin Albrethsen, and quitclaim deeds whereby Martin Albrethsen and his wife conveyed 100 miner's inches of the water right to Holger Albrethsen and 50 miner's inches thereof to Leonard J. Larson, who, after mortgaging his land and water rights to respondent, reconveyed the 50-inch Buller right to Martin Albrethsen. These deeds describe the water rights conveyed with particularity.

Appellant introduced in evidence a mortgage acknowledged August 16, 1922, wherein Martin Albrethsen and wife mortgaged the Buller ranch to it, and therein recited: "Together with Six Hundred (600) inches of the waters of the Big Wood River with a priority date of June 12, 1886, decreed to R. F. Buller and Rosa B. Buller in that certain suit in the District Court of the Fourth Judicial District of the State of Idaho wherein S. C. Frost et-al were plaintiffs and Alturas Water Company et-al were defendants." That mortgage was foreclosed, resulting in the issuance of a

sheriff's deed conveying the land and water right, so described, to appellant.

There is nothing of record to indicate that any part of the 600 miner's inches of the Buller water right remaining in the ownership of Albrethsen was mortgaged to respondent. "A water right is real property and may be sold and transferred separately from the land upon which it has been used, the same as any other real property." (*In re Rice*, 50 Ida. 660, 299 Pac. 664, and cases therein cited.) "A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." (I. C. A., sec. 54–601.) It is provided in I. C. A., sec. 54–812: "Every conveyance of real property other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." Sec. 54–813 is as follows: "The term 'conveyance' as used in this chapter, embraces every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills."

Appellant had a right to rely on the record which showed the 600 miner's inches of water was appurtenant to the Buller land and which failed to show any part of it had been mortgaged to respondent. The rule is thus stated in 23 R. C. L. 197: "A person, in dealing with another in respect to real estate, may rely on the record title to the property, in the absence of actual knowledge of the title in fact, or of facts sufficient to put him on inquiry in respect thereto."

Respondent introduced in evidence two applications made by Albrethsen to appellant for a loan, each describing a portion of the Buller ranch. In one of the applications he stated 150 miner's inches of water was appurtenant to the land therein described. In the other application he stated the land therein described subirrigated and did not require surface irrigation. June 7, 1922, Albrethsen and wife executed a mortgage, on the land described in these

applications, in favor of appellant, which was recorded, and therein stated the water right to be 150 miner's inches. The record shows these applications were rejected by appellant and the mortgage was released because it declined to make the loan on less security than the land and water right of 600 miner's inches. The loan was made on the mortgage acknowledged August 16, 1922, with the 600 miner's inches water right therein particularly described.

Respondent urges that the recitations in the applications and in the mortgage, which were rejected, gave notice to appellant that the water right appurtenant to the Buller ranch was limited to 150 miner's inches. Neither of these documents contains a statement contradictory to the records in the office of the county recorder, which, according to the abstract in evidence, showed Martin Albrethsen and wife to be the owners of 600 miner's inches of Buller water right, unencumbered, nor is there anything in these documents to indicate respondent made claim to any part of it.

However, assuming these documents contained information sufficient to put a prudent person on inquiry with respect to the water right, the record shows diligence on appellant's part in making the inquiry and there is no suggestion of lack of good faith in making it. There was introduced in evidence an affidavit made by Martin Albrethsen and Caroline Albrethsen, a letter written to the brokers who handled this loan, and a certificate by the water-master who had charge of the delivery of the water. These documents are shown to have been furnished appellant before it loaned its money to Albrethsen on the Buller ranch and water right and they are sufficient to give assurance that the water right was what he represented it to be and what the county records showed it to be. They are as follows:

## "AFFIDAVIT

"State of Idaho $\Big\}$ ss.
County of Blaine

"Martin Albrethsen & Caroline Albrethsen, being duly sworn upon oath deposes and says:

"On the first day of April, 1916 we purchased from the estate of R. F. Buller, 720 acres of land together with 750 inches of water from Big Wood River to the priority date of June 12, 1886.

"We have executed a mortgage dated June 7, 1922, acknowledged August 16, 1922 covering this same land together with 600 inches of water conveyed to me.

"We do solemnly swear that we have not bargained, sold or transferred any portion of said 600 inches of water or contracted to sell or transfer the same to any person.

"We make this affidavit for the purpose of obtaining a loan of money from The Union Central Life Insurance Company.

"MARTIN ALBRETHSEN.

"CAROLINE ALBRETHSEN.

"Subscribed and sworn to before me this 30th day of August, 1922.

"R. B. FRENCH,

"(Seal)                                    "Notary Public.

"Residing at Hailey.

"My Commission expires Aug. 29, 1926."

"Hailey, Idaho.

"August 30, 1922.

"Miller & Viele,

"Salt Lake City, Utah.

"Gentlemen:

"I have read the affidavit of Martin Albrethsen executed in connection with the loan in which he recites that he has not bargained, transferred or sold any portion of the 600 inches of water secured from the Buller Estate in April, 1916 and as far as my knowledge and information goes, the affidavit is true in every respect and I have no knowledge of any portion of said 600 inches being sold, bargained or transferred.

"R. B. FRENCH."

"Hailey, Idaho, July 17, 1922.

"This is to certify that I now am and have been during the past five years, assistant to the State Engineer and

Water Master with supervision over Big Wood River and with that authority I have delivered to Martin Albrethsen, his full decree of 750 inches, June 12, 1886 Priority, being his full decree, except such times when a shortage of water prevented such delivery.

"Signed    S. H. CHAPMAN,
"Water Master."

The evidence, introduced in the two trials of this case, is insufficient to sustain the decree and it is reversed with instructions that a decree be entered that plaintiff have and recover nothing, and that the suit be dismissed. Costs awarded to appellant.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.