127 P.3d 111

**Peter and Suzanne ADAMS, husband and wife, Plaintiffs–Appellants,**

v.

**Albert A. ANDERSON, III and Sue Anderson, husband and wife, Defendants–Respondents.**

No. 30528.

Supreme Court of Idaho, Boise, November 2005 Term.

Dec. 20, 2005.

Naylor & Hales, P.C., Boise, for appellants. Colleen D. Zahn argued.

Davison, Copple, Copple & Cox, Boise, for respondents. Terry C. Copple argued.

JONES, Justice.

Peter and Suzanne Adams brought this action seeking a declaratory judgment that they, rather than Albert and Sue Anderson, are the fee simple owners of a disputed piece of property. The district court granted summary judgment for the Andersons. We reverse and remand for further proceedings consistent with this opinion.

## I.

The parties dispute ownership of a small parcel of land that lies along the common boundary of the parties' respective residential lots. The Adams own Lot 2, Block 1, DuMars Subdivision in Ada County, while the Andersons own the adjoining Lot 3. The disputed property is a portion of Lot 3 which was sold in 1981 by Myers, a previous owner of Lot 3, to Oberbillig, a previous owner of Lot 2. After Myers and Oberbillig agreed on the location of the portion to be sold, he paid her for it and obtained a lot line readjust-

ment survey, which is evidenced by a Record of Survey, recorded on May 20, 1982. Both Myers and Oberbillig signed the Record of Survey, acknowledging that it adjusted the lot line between the two properties. A deed conveying the disputed property was executed by Myers, but never recorded. After the sale, Oberbillig installed a rock wall, a sprinkler system, and some landscaping on the disputed property.

At the time of the sale, Myers was the record owner of Lot 3. Oberbillig was the equitable owner of Lot 2 under a deed of trust given by the Applings, the legal owners, to United First Federal Savings and Loan, which Oberbillig assumed by a written instrument dated June 15, 1981. In 1985, Myers conveyed Lot 3 to Aberg who conveyed it to a Mr. & Mrs. Lyons in 1987. The property description in both deeds referenced the lot, block, subdivision, county and state, including the filing information for the subdivision plat, but neither deed referenced the Record of Survey. In 1996, the Andersons acquired Lot 3 from the Lyons. Their warranty deed contained reference to the Record of Survey. The property description in their deed recited:

> Lot 3 in Block 1 of DuMars Subdivision, according to the official plat thereof, filed in Book 39 of Plats at Pages 3290 and 3291, official records of Ada County, Idaho; amended by record of survey recorded May 20, 1982, as Instrument No. 8221580.

Seven years later, after this dispute arose, Pioneer Title Company re-recorded the Andersons' deed, showing a line through the clause referencing the Record of Survey. The title company also recorded a quitclaim deed from Mr. Lyons to the Andersons using the altered legal description in the re-recorded deed.

Oberbillig defaulted on his loan, resulting in a foreclosure of the deed of trust. The beneficiary, United First Federal, acquired title at the foreclosure sale in 1996 and later that year conveyed it to the Becks via a corporate warranty deed. The Becks sold Lot 2 to Lynn in 1988, who then sold it to Williams in 1995. Finally, in 2000, the Adams acquired Lot 2 from Williams. No

deed in the chain of title for Lot 2 contained reference to the Record of Survey.

Both the Adams and the Andersons inquired about the disputed property at the time they purchased their respective lots. Adams questioned Williams, the former owner of Lot 2, about the property boundary but Williams said he was unaware of the exact location of the property line. He learned about the existence of the Record of Survey and the lot line adjustment in 1999 when he refinanced his home, but was unsure of its legal effect. Williams informed the Adams of the Record of Survey and lot line adjustment. The Andersons questioned their realtor, the seller, a relocation company handling the sale, and the title company, about the Record of Survey before closing on their purchase. According to the Andersons, they were informed by the relocation company and the title company that the Record of Survey had no legal effect on the boundary line. Both the Adams and the Andersons contend ownership of the disputed property was material to their decision to purchase their respective lots and they each believed they owned the disputed property when they closed.

## II.

■ Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c). In the current case there are no disputed issues of material fact; therefore, we exercise free review over all remaining questions of law. *City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000) (citation omitted).

In this opinion, we address three issues. We first consider whether the Record of Survey constituted a conveyance. Next, we consider whether the conveyance was properly recorded. Finally, we address the parties' arguments as to whether this action involves an oral agreement to convey.

## A.

■ Under the facts in the current case, the Record of Survey was a valid conveyance. A conveyance is an "instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills." I.C. § 55–813. A conveyance may be made "by an instrument in writing, subscribed by the party disposing of the same," and containing "[t]he name of the grantee and his complete mailing address." I.C. § 55–601. The conveyance must also contain a sufficient description of the property being conveyed. *City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 135 Idaho 239, 244, 16 P.3d 915, 920 (2000). All of these elements are found in the Record of Survey. First, the Record of Survey, on its face, depicts the adjustment of the boundary between Lots 2 and 3. It also shows both Myers and Oberbillig intended to have the boundary changed because they both signed in acknowledgment of and in agreement to the new boundary line. The "Certificate of Property Owners" on the document states, "We, the undersigned, do hereby certify that we are the owners of Lots 2 and 3, Block 1, DuMars Subdivision, and that this lot line readjustment is acceptable." This change of boundary presumes one party, Myers, is giving up the disputed property and the other party, Oberbillig, is receiving it. Therefore, the Record of Survey meets the statutory definition of conveyance because it purported to transfer the disputed property and it "created, alienated, mortgaged or encumbered" the title of both Lots 2 and 3. I.C. § 55–813.

■ Second, the Record of Survey was in writing and contained a sufficient description of the property. A property description is sufficient so long as the quantity, identity or boundaries of the property can be determined from the face of the document. *City of Kellogg*, 135 Idaho at 244, 16 P.3d at 920. The Record of Survey contains a sufficient legal description of the disputed property. On its face, it explains it is a "Lot Line Readjustment Between Lots 2, 3, Block 1, DuMars Subdivision, in the NE¼ Section 33, T.4N., R.2E., B.M., Ada County, Idaho."

Further, the survey plat depicts both the original lot line and the adjusted lot line. The original lot line is shown as a broken line, labeled "Original Lot Line" and the adjusted lot line, which was accepted by Myers and Oberbillig, is identified by a solid line and labeled "Adjusted Lot Line." The courses and distances of the common boundary between the reconfigured lots are clearly shown. The Record of Survey shows the lot, block, street, city, county, and state where both lots are located.

Further, the Record of Survey was subscribed to by Myers, the party disposing of the disputed property. Contrary to the Andersons' argument, this Court has held that I.C. § 55–601 does not require the parties' acknowledgement before a notary. *Mollendorf v. Derry,* 95 Idaho 1, 4, 501 P.2d 199, 202 (1972). Instead, it is necessary for the party disposing of the property to subscribe, or sign, the document. Myers signed the Record of Survey and accepted the readjustment.

Next, the Record of Survey contains the name of the grantee, Oberbillig. While the Record of Survey does not state outright that Oberbillig is the grantee, a glance at the survey shows he is receiving part of Myers property, making him the grantee. Finally, although Oberbillig's address is not shown, the lot, block, street, county, and city are all shown on the Record of Survey. Further, the Record of Survey clearly indicates the legal description of the subject property and of Lots 2 and 3. Given the amount of detail provided in the Record of Survey, it would not be difficult to ascertain Oberbillig's street address. *See City of Kellogg,* 135 Idaho at 243, 16 P.3d at 919 (A conveyance agreement providing only the name of the city contained a sufficient address since the City of Kellogg is a well-known municipality in Idaho). Therefore, based on the undisputed facts in the record, the Record of Survey constitutes a conveyance.

It is important to explain that while we are ruling that the current Record of Survey was a valid conveyance, we are not holding that all records of survey are conveyances. The Record of Survey before us is a conveyance only because it meets all of the statutory requirements contained in I.C. § 55–601 and I.C. § 55–813.

**B.**

Having concluded that the Record of Survey was a conveyance, we must now decide whether the Record of Survey was properly recorded and whether the Andersons had adequate notice of its existence.

**1.**

Idaho Code §§ 55–809 and 55–811 state that a conveyance provides constructive notice of its contents to subsequent purchasers when it has been acknowledged or proved, and certified, and deposited with the recorder's office. *See also Miller v. Simonson,* 140 Idaho 287, 290, 92 P.3d 537, 540 (2004). A conveyance is properly acknowledged when an official, including a notary, judge, clerk of the court, or county recorder, certifies he has personal knowledge or satisfactory evidence that the individual making the acknowledgment is the individual described within the document. I.C. §§ 55–701, 55–702, 55–707, 55–709. In the case before us, the Record of Survey lacked such an acknowledgment.

However, the Record of Survey was properly proved and recorded under I.C. §§ 55–809 and 55–811. Idaho Code Section 55–718 states "[p]roof of the execution of an instrument, when not acknowledged, may be made ... [b]y the parties executing it, or either of them ... " I.C. § 55–718(1). The Adams contend the Record of Survey was adequately proven because they have proven the signature of Myers on it. As explained above, both Myers and Oberbillig signed a "Certificate of Property Owners" on the Record of Survey, which states "We, the undersigned, do hereby certify that we are the owners of Lots 2 and 3, Block 1, DuMars Subdivision, and that this lot line readjustment is acceptable." Neither the Adams nor the Andersons maintain these signatures are not genuine. In Myers' affidavit, she explained that both she and Oberbillig signed the Record of Survey so it could be recorded. She also stated that the Record of Survey contained an accurate depiction of the disputed

property she sold to Oberbillig and that she intended the readjustment of the boundary line between them. Based upon this evidence, we hold that the "Certificate of Property Owners" is sufficient proof of execution by the parties. Therefore, the Record of Survey was properly proven prior to its being recorded.

Under Idaho law, once an instrument is acknowledged or proved, it must be "deposited in the recorder's office with the proper officer for record." I.C. § 55–809. This means the parties must file the instrument with the proper official in the county recorder's office. *Miller*, 140 Idaho 287, 92 P.3d 537. As required under I.C. §§ 55–1904 and 55–1910 the Record of Survey was filed with the county recorder. Idaho Code Section 55–1904 requires the filing of a record of survey that "[e]stablishes boundary lines ... not previously existing or of record ..." The district court incorrectly held that compliance with I.C. § 55–1904 did not sufficiently satisfy the requirements for recording an instrument of conveyance. In doing so, the district court failed to explain which recording requirements were not met. The only difference in the requirements under I.C. § 55–1904, as opposed to those under I.C. §§ 55–809 and 55–811, is the acknowledgement or proof of execution requirement. As explained above, this requirement was met. Therefore, the Record of Survey was properly recorded.

The Andersons argue the Record of Survey does not provide constructive notice because it was not within the chain of title under the index of deeds. *See Harris v. Reed*, 21 Idaho 364, 371–72, 121 P. 780, 782 (1912); *see also West Wood Investments, Inc. v. Acord*, 141 Idaho 75, 92, 106 P.3d 401, 418 (2005) (Eismann, J. dissenting). While the Record of Survey was not in the grantor-grantee index, the Andersons had actual knowledge of it because it was referenced in their deed. The Andersons do not dispute this fact. Instead the Andersons assert that the relocation company informed them in writing that the Record of Survey had no legal effect. However, this assertion is of no avail. What the relocation company told the Andersons does not change the actual legal

effect of the Record of Survey. It also does not change the fact that the Andersons had actual notice of the Record of Survey through their deed.

The Andersons' argument regarding the failure of the Record of Survey to be included in the index of deeds fails for another reason. Conveyances of the lots were always made by reference to the lot, block, and subdivision. The deeds did not utilize metes and bounds descriptions. In order to see what property was being conveyed, reference necessarily had to be made to the subdivision records for the DuMars Subdivision. As with the deed the Andersons received when they acquired the property, reference to subdivision records would necessarily show the Record of Survey, which changed the location of the lot line between Lot 2 and Lot 3. Myers and Oberbillig complied with the applicable requirements of the City of Boise in adjusting the lot line. There is no evidence to the contrary. On the Record of Survey, the surveyor certified that the lot line readjustment did not violate the requirements of Section 9–20–4.3.1 of the Boise City Code. The city engineer certified "that this lot line readjustment is in accordance with the provisions of Section 9–20–4.3.1 Boise City Code." The then-applicable version of the Boise City Code exempts lot line readjustments that comply with this section from subdivision platting requirements. That is, a properly compliant lot line adjustment is effective to change the lot line between adjoining lots. Any subsequent conveyance of either Lot 2 or Lot 3 would, therefore, convey the property within the respective reconfigured lot. Had the conveyances of Lots 2 and 3 been made with metes and bounds legal descriptions, rather than by reference to the subdivision lots, the outcome here may well have been different.

It would obviously be the preferred practice to follow up a lot line adjustment with an exchange of quitclaim deeds, utilizing metes and bounds descriptions so that the change of the boundaries would also be reflected in the index of deeds. However, that is not necessary in this case since Myers and Oberbillig certified on the Record of Survey that they agreed to the lot line readjustment, the

portion of Lot 3 that Myers was giving up and Oberbillig was acquiring was clearly identified and described on the Record of Survey, and all subsequent conveyances of both lots were made by reference to lot, block and subdivision.

### 2.

 The Andersons argue that they are bona fide purchasers, and, therefore, the conveyance is void as to them. However, this argument is misplaced. A bona fide purchaser is one who, at the time of the purchase, paid valuable consideration without actual or constructive notice of any outstanding adverse rights of another. *Haugh v. Smelick*, 126 Idaho 481, 483, 887 P.2d 26, 28 (1993). Additionally, a person is not a bona fide purchaser if he purchased the property with sufficient knowledge to put a reasonably prudent person on inquiry. *Id.*

In the current case, the Andersons had both constructive and actual knowledge of the Record of Survey. As explained above, the Andersons had constructive knowledge under I.C. § 55–811 because the Record of Survey was properly recorded. Additionally, the Andersons had actual knowledge of the Record of Survey because their warranty deed referred to it and stated Lot 3 was "amended by record of survey recorded May 20, 1982, as Instrument No. 8221580." Moreover, the language of the Record of Survey gave the Andersons sufficient information to put a reasonably prudent person on inquiry concerning the ownership of the disputed property. *See Haugh*, 126 Idaho at 483, 887 P.2d at 28. Consequently, the Andersons were not bona fide purchasers.

### C.

In their briefs, the parties contest whether the Record of Survey was an oral contract to convey and, if so, whether it withstood the statute of frauds due to partial performance. This dispute is rendered moot by our holding that there was a proper conveyance. Therefore, it is not necessary to address whether Myers and Oberbillig had an oral contract to convey or whether such an oral contract would be barred by the statute of frauds.

### III.

The district court's decision is reversed and the case is remanded for further proceedings consistent with this opinion. The district court's award of costs to the Andersons is reversed, as they are not the prevailing party. Idaho R. Civ. P. 54(d). Whether the Adams are entitled to costs below must be determined on remand. *Id.* The Adams are entitled to costs on appeal. Idaho App. R. 40(a).

Chief Justice SCHROEDER, Justice BURDICK, Justices Pro Tem KIDWELL and WALTERS concur.